**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

|  |  |  |
|---|---|---|
| | * | |
| **CATHERINE HINMAN, et al.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action No. CBD-15-1364** |
| | * | |
| **CLEAN CUT LANDSCAPING AND,** | * | |
| **EXCAVATING, LLC, et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |
| | * | |

**<u>MEMORANDUM OPINION</u>**

Before the Court is Defendants' Motion for Bifurcation ("Motion") (ECF No. 52).  The Court has received and reviewed the Motion, related memoranda, and applicable law thereto.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md.).  For the reasons presented below, the Court DENIES the Motion.

**I.      Background**

On December 3, 2013, Catherine Hinman ("Plaintiff"), a resident of New Mexico who was in Maryland visiting family, was driving eastbound on Skinners Turn Road towards its intersection with Solomons Island Road in Calvert County, Maryland.  First Am. Compl. ¶¶ 1, 7, ECF No. 15.  At the same time, Robert Pitcher ("Defendant") was driving his pickup truck southbound on Solomons Island Road.  *Id.* at 17.  Skinners Turn Road is controlled by a stop sign in that intersection, with about 32 feet of space existing between the stop sign and the Solomons Island Road lane.  *Id.* at 12, 14.  Solomons Island Road is a two lane road with one

lane of travel in each direction, and includes right turn lanes in each direction that open up for traffic intending to turn onto Skinners Turn Road.  *Id.* at 9, 11.

Plaintiff testified that she stopped at or before the stop sign on Skinners Turn Road, and then moved her vehicle into the space between the stop sign and the edge of Solomons Island Road, looking left at the southbound traffic for a break between cars.  Pls.' Opp'n to Defs.' Mot. 3-4.  She testified that she then saw a white pickup truck heading towards her.  *Id.* at 4.  Defendant claims that Plaintiff's vehicle was crossing in front of him in the southbound lane "directly into his lane of travel."  *Id.*; Defs.' Mot. Bifur. 2.  Plaintiff alleges that Defendant veered into the right turn lane, but instead of making a right onto Skinners Turn Road, he collided with Plaintiff's vehicle, injuring Plaintiff.  First Am. Compl. ¶¶ 18-19, 21.  Liability is highly contested between the parties.

Defendants seek to bifurcate the trial between liability and damages, asserting that the two issues are distinct and can be easily separated to avoid prejudice, confusion, and promote judicial economy.  Defs.' Mot. Bifur. 1, 6.

## II.    Analysis

The Court may order separate trials of any claims or issues "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b).  The Court has broad discretion in deciding whether to grant requests to bifurcate claims, the exercise of which will be set aside only if clearly abused.  *Dawson v. Prince George's Cty.*, 896 F. Supp. 537, 539 (D. Md. 1995).  While trial bifurcation is left to the informed discretion of the Court, it should not normally be resorted to because "[m]ore often, a single trial tends to lessen the delay, expense and inconvenience to all concerned."  *Molinaro v. Watkins-Johnson CEI Div.*, 60 F.R.D. 410, 413

(1973).  "Matters of economy, however, must yield to the fair and impartial treatment of all litigants."  *Id.*

Defendants argue that bifurcating the liability and damages phases of the trial will promote judicial economy because if the jury finds for Defendants in the liability phase, there will be no need to make a finding on damages.  Defs.' Mot. Bifur. 7.  Defendants rely on *Air-Shields, Inc. v. The BOC Group*, 1992 WL 315230, at *2 (D.  Md. Feb. 28, 1992), a complex patent infringement case where the court found that bifurcation might "circumvent the need for a lengthy damages phase."  In *Air-Shields*, the issues were complex, whereas here, Plaintiff claims that damages will include "medical expenses, lost household services, and pain and suffering . . . standard damages claimed in almost all personal injury cases[.]"  Pls.' Opp'n to Defs.' Mot. 14.  "Determining the full extent of damages is unnecessary in any trial when the defendants prevail, but this 'potential time savings is true in all bifurcated cases' and does not, in itself, justify bifurcation."  *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 2011 WL 5825689, at *2 (D. Md. Nov. 16, 2011) (citing *R.E. Linder Steel Erection Co., Inc.*, 585 F. Supp. at 1534).  In light of any potential complexity, "the Court is confident that the jury will be able to decide on issues of liability and damages."  *Classen Immunotherapies, Inc. v. King Pharm., Inc.*, 403 F. Supp. 2d 451, 461 (D. Md. 2005).

In their Motion, Defendants also cite *McKellar v. Clark Equip. Co.*, 101 F.R.D. 93, 94 (D. Me. 1984), where the District of Maine allowed for the bifurcation of liability and damages issues in a personal injury case.  The *McKellar* court noted that the liability issues provided "the serious dispute" in the case, whereas little dispute existed with respect to the plaintiff's injuries or their "economic consequences."  *Id.* at 94.  Thus, the court explained, bifurcating the trial between liability and damages issues would expedite the case along whichever way it was

resolved: If the jury found for the defendants at the liability proceeding, there would be no need for a trial on damages; if the jury found for the plaintiff, "the central, disputed issues of the case would have been disposed of," and the parties would most likely arrive to voluntarily settlement. *Id.* In the present case, we have no indication from Defendants that they will not contest the damages alleged by Plaintiff, or their economic consequences, so the particular reasoning of *McKellar* does not apply here. Furthermore, both parties have previously agreed that the trial would take no more than five days. With such a relatively short timeframe for the entire trial, bifurcating the issues saves, at best, no more than one or two days of damages discussion. The potential to save so few days does not, in the Court's opinion, outweigh the time, effort, and resources it would take to prepare for an entirely separate trial if the jury were to find for Plaintiff in the liability phase.

Defendants also claim that bifurcation is favored by courts in personal injury cases to avoid prejudice. Defs.' Mot. Bifur. 9. Defendants allege that the "graphic evidence" of Plaintiff's surgeries and her life altering problems will produce an "overwhelming sympathy" for Plaintiff. *Id.* at 10. To support their argument, Defendants rely upon *McKellar*, 101 F.R.D. at 95, where the District of Maine explained

> that evidence concerning the severity of the Plaintiff's injuries, the lengthy treatment which the Plaintiff received from numerous physicians, and the physical and economic impact of those injuries holds a definite potential to adversely and improperly affect a jury's fair, impartial and objective consideration of the liability issues. Separation of the liability and damage issues for purposes of trial is, in the judgment of the Court, the best means by which to obviate the likelihood of such unfair prejudice to either of the Defendants in this case.

The plaintiff in *McKellar* was a "quadriplegic" whose "injuries [were] very severe, the economic consequences extensive and the damage of great magnitude in economic terms." *Id.* at 94.

Defendants also cite *Helminski v. Ayerst Labs.*, 766 F.2d 208, 210 (6th Cir. 1985), where the

Sixth Circuit reviewed a bifurcated trial of a suit brought by the parents of a handicapped minor for alleged injuries that occurred *in utero* as a result of a surgical anesthetic manufactured by the defendant.  The *Helminski* Court held that the trial court appropriately exercised its discretion to order separate trials on the issues of liability and damages because the evidence pertinent to each issue was unrelated and because the evidence relevant to the damages issue, i.e. the nature and extent of the child's neurological disability, "could have a prejudicial impact upon the jury's liability determination."  *Id.* at 212-13.  The mere presence of the injured plaintiff in *Helminski* was likely to move the jurors to sympathy as he was described as being "approximately six feet tall and weighing ninety pounds[, was] unable to speak but ma[d]e sounds which can be frightening to others."  *Id.* at 212.

In contrast with the severely injured plaintiffs in the cases relied upon by Defendants, Plaintiff here is not in a state where her "mere presence . . . would render the jury unable to arrive at an unbiased judgment concerning liability."  *Id.* at 217.  As Plaintiff notes, she "is an adult who is not visibly disfigured, confined to a wheelchair, or otherwise sympathetic appearing . . . Plaintiff's injuries are not complex and revolve primarily around her broken pelvis [which can] easily be explained to the jury by Plaintiff's expert witnesses."  Pls.' Opp'n to Defs.' Mot. 9.  While Defendants point out that Plaintiff "became fidgety and had to stand up and stretch" a quarter of the way into her deposition, Defs.' Rep. to Pl.'s Opp'n 1-2, they fail to show how the injuries sustained by Plaintiff are so much more extreme than a significant but typical personal injury case such that the jury would be unduly prejudiced in Plaintiff's favor.  The possibility for sympathy and prejudice exists in almost every personal injury case, and any such prejudice that Defendants may encounter can be cured by instruction to the jury.  *R.E. Linder Steel Erection Co., Inc. v. Wedemeyer, Cernik, Corrubia, Inc.,* 585 F.Supp. 1530, 1534 (D. Md. 1984).

**III.**     **Conclusion**

Denying the request for bifurcation of liability and damages would not significantly prejudice Defendants.  Equally, bifurcation would not "expedite" or "economize" the pending trial.  For the foregoing reasons, the Court DENIES the Motion.


September 30, 2016                                     _____/s/_____
                                                      Charles B. Day
                                                      United States Magistrate Judge

CBD/xl